UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

FRANKLIN WI APARICIO-VILLATORO,

                              Petitioner,

              -vs-

WILLIAM P. BARR, Attorney General;
THOMAS FEELEY, Field Office Director
for Detention and Removal Buffalo
Field Office Bureau of Immigration
and Customs Enforcement Department of
Homeland Security; and JEFFREY
SEARLS, Facility Director, Buffalo
Federal Detention Facility,

                              Respondents.

No. 6:19-cv-06294-MAT
DECISION AND ORDER

## I.    Introduction

Proceeding *pro se*, Franklin Wi[1] Aparicio-Villatoro ("Aparicio-Villatoro" or "Petitioner") commenced this habeas proceeding pursuant to 28 U.S.C. § 2241 ("§ 2241") against the named Respondents (hereinafter, "the Government") challenging his continued detention in the custody of the United States Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"). For the reasons discussed below, the request for a writ of habeas corpus is granted.

## II.   Factual Background

The following factual summary is drawn from the Declaration of

[1]
    Petitioner's El Salvador passport (Docket No. 7, p. 38 of 95) indicates that his middle name is "Wilfredo" not "Wi."

-1-

Joseph D. Marchewka ("Marchewka Decl.") (Docket No. 4-1) and attached Exhibits (Docket No. 4-2) and the exhibits (Docket No. 1-1) attached to the Petition.

Aparicio-Villatoro, a native and citizen of El Salvador, entered the United States on an unknown date at an unknown place in January 2004, after traveling through Guatemala and Mexico. Aparicio-Villatoro states in his Petition that while he was in high school, two MS-13 gang members came to his school looking for a friend of his. They asked Aparicio-Villatoro's friend why he had changed his mind and refused to come for a meeting with them as scheduled. Apparently, Petitioner's friend did not give them an acceptable answer, at which point one of the gang members pulled out a gun and fatally shot him. Aparicio-Villatoro escaped but ultimately left El Salvador out of fear of retaliation by MS-13 members since he was the only witness to the shooting of his friend. Once in this country Aparicio-Villatoro obtained a tax identification number and worked for a number of years doing construction and plumbing work. Prior to his being taken into DHS custody, he lived in Silver Spring, Maryland with his U.S. citizen girlfriend (whom he married in December 2018) and their two-year-old son.

On October 5, 2018, at approximately 11:05 PM, a United States Border Patrol Agent ("BPA") observed a black colored Honda with Virginia license plates operating on New York State Route 122,

which the Government claims is a smuggling corridor for illegal aliens near the Akwesasne Mohawk Reservation in Hogansburg, New York. A vehicle record check of the black Honda revealed that it had not crossed the international border from Canada into the United States at a port of entry. Ultimately, the BPA made the decision to conducted a vehicle stop of the black Honda at around 11:14 p.m.

Upon questioning, the driver, Aparicio-Villatoro, stated that he was born in El Salvador and lacked any documents authorizing him to remain in the United States. The front-seat passenger and two rear-seat passengers also admitted upon questioning that they were born outside of the United States and lacked visas or other documentation allowing them to legally remain in the United States.

Following the traffic stop, Aparicio-Villatoro was transported to the Burke New York Border Patrol Station for processing where he declined to answer questions before speaking to a lawyer and declined the opportunity to contact the El Salvador Consulate. Aparicio-Villatoro was held based on an alleged violation of 8 U.S.C. § 1182 and Immigration and Nationality Act ("INA") § 212, as being an alien present without admission. On October 6, 2018, he was served with a Notice to Appear ("NTA"), charging him with being subject to removal from the United States pursuant to INA § 212(a)(6)(A)(i) as an alien present in the United States without being admitted or paroled, or who arrived in the United States at

any time or place other than as designated by the Attorney General. Also on October 6, 2018, DHS reviewed Aparicio-Villatoro's custody status and determined that he should be detained pending a final decision in his immigration proceedings.

On or about October 16, 2018, Aparicio-Villatoro was transferred to the BFDF. On November 16, 2018, the IJ granted the motion to continue filed by Aparicio-Villatoro's immigration counsel. The IJ granted a subsequent motion to continue on November 21, 2018, rescheduling the custody redetermination hearing for December 6, 2018.

Prior to the bond hearing, Aparicio-Villatoro's immigration attorney submitted a number of letters of support from family and friends attesting to his significant family ties in the United States and his lack of any criminal conduct. Also submitted were the birth certificate of his two-year-old son and a letter of support and proof of hardship from his fiancee, a U.S. citizen, along with letters of support from his two U.S. citizen brothers and U.S. citizen uncles, cousins, and aunts; copies of lease agreements; bank account statements; pay stubs; and proof of filing of income tax returns. *See generally* Docket No. 1-1, pp. 14-23 of 164 (Respondent's Bond Brief on Appeal dated 1/23/2019); Docket No. 1-1, pp. 24-164 (documents submitted at bond hearing). DHS opposed the bond request but made no submissions prior to the actual bond hearing and made no submisrions at the bond hearing. Docket No. 1-

1, p. 16 of 164. Aparicio-Villatoro provided testimony by which he
established that he does not have criminal history and, although he
admittedly worked without authorization, obtained a tax
identification number ID and has been filing taxes since he began
working in the United States. Aparicio-Villatoro testified that he
fled El Salvador due to the widespread gang violence and the fears
that his grandfather had for his safety. He further testified that
he is the sole breadwinner for his family and his fiancee depends
on him to pay the bills for the home including her medical bills
due to her eye surgery. He indicated that if released, he would
return to his residence in Maryland with his fiancee and child.
Following the hearing, the IJ denied Aparicio-Villatoro's request
for a change in custody status, finding that he was a flight risk,
had used a smuggler to cross the border initially, and had worked
in the United States without authorization. The removal hearing was
re-scheduled for March 7, 2019.

On December 27, 2018, through counsel, Aparicio-Villatoro
filed his applications for relief from removal, including a Form
EOIR-42B Application for Cancellation of Removal and Adjustment of
Status for certain Non-Permanent Residents, a Form I-589
Application for Asylum and for Withholding of Removal, along with
supporting documents. Aparicio-Villatoro submitted additional
evidence, namely, proof of continuous residency and of a qualifying
relative, to support the applications he made for relief from

removal on January 2, 2019, and February 26, 2019.

On December 17, 2018, Aparicio-Villatoro appealed the IJ's December 6, 2018 bond decision. On December 27, 2018, he submitted a Request for Administrative Bond or Release on Alternatives to Detention. On January 2, 2019, DHS denied the request citing Aparicio-Villatoro's previous bond hearing on December 6, 2018, following which the IJ determined that Villatoro was a flight risk and denied bond. The IJ's memorandum decision (Docket No. 4-2, pp. 21-24 of 48) regarding the December 6, 2018 bond denial was issued on January 8, 2019.

On March 7, 2019, Aparicio-Villatoro appeared with counsel at his removal hearing. He testified, along with his wife, who is a United States citizen and with whom he has a two-year-old son. At the conclusion of the proceeding, the IJ reserved decision. On May 3, 2019, the IJ issued a written decision (Docket No. 4-2, pp. 28-42 of 48) denying Aparicio-Villatoro's applications for relief from removal and ordering him removed to El Salvador. The IJ noted that Aparicio-Villatoro conceded his ineligibility for asylum because he failed to file his application within the one-year deadline. The IJ also found that Aparicio-Villatoro failed to meet his burden in proving that it is more likely than not that he will suffer harm rising to the level of persecution if he is returned to El Salvador and failed to demonstrate that he will more likely than not be subject to torture in El Salvador. The IJ concluded that Aparicio-

Villatoro had failed to demonstrate that his removal would result in exceptional and extremely unusual hardship to his qualifying relatives, as is required for cancellation of removal.

On May 23, 2019, Aparicio-Villatoro timely appealed the IJ's order of removal to the Bureau of Immigration Affairs ("BIA"). On May 21, 2019, the BIA dismissed (Docket No. 4-2, pp. 46-47 of 48) Aparicio-Villatoro's appeal of the IJ's bond decision. His appeal of the IJ's removal order remains pending before the BIA. Aparicio-Villatoro is currently held at the BFDF pending completion of his immigration proceedings.

## III. Scope of Review

Title 28 U.S.C. § 2241 grants this Court jurisdiction to hear habeas corpus petitions from aliens claiming they are held "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) (citing 28 U.S.C. § 2241(c)(3)). However, the REAL ID Act of 2005, Pub. L. No. 109-13, § 106(a), 199 Stat. 231 (May 11, 2005) amended the Immigration and Nationality Act ("INA") to provide that petitions for review filed in the appropriate Courts of Appeals were to be the "sole and exclusive means for judicial review" of final orders of removal. *Ruiz-Martinez v. Mukasey*, 516 F.3d 102, 113 (2d Cir. 2008) (citing REAL ID Act § 106(c); 8 U.S.C. § 1252(a)(5)). In other words, the REAL ID Act "strips district courts of jurisdiction to hear habeas petitions challenging final

orders of deportation. . . ." *De Ping Wang v. Dep't of Homeland Sec.*, 484 F.3d 615, 615-16 (2d Cir. 2007). District courts still are empowered to grant relief under § 2241 to claims by aliens under a final order of removal who allege that their post-removal-period detention and supervision are unconstitutional. *See Zadvydas*, 533 U.S. at 687-88; *see also Hernandez v. Gonzales*, 424 F.3d 42, 42-43 (1st Cir. 2005) ("The Real ID Act deprives the district courts of habeas jurisdiction to review orders of removal, . . . [but] those provisions were not intended to 'preclude habeas review over challenges to detention that are independent of challenges to removal orders.'") (quoting H.R. Cong. Rep. No. 109-72, at *43 2873 (May 3, 2005)).

Although this Court has jurisdiction to decide statutory and constitutional challenges to civil immigration detention, it does not have jurisdiction to review the discretionary decisions of the Attorney General. *Zadvydas*, 533 U.S. at 688 (citing 8 U.S.C. § 1252(a)(2)(B)(ii)) ("[N]o court shall have jurisdiction to review . . . any other decision or action of the Attorney General . . . the authority of which is specified under this subchapter to be in the discretion of the Attorney General."). "[W]hether the district court has jurisdiction will turn on the substance of the relief that a [petitioner] is seeking." *Delgado v. Quarantillo*, 643 F.3d 52, 55 (2d Cir. 2011) (*per curiam*).

**IV. Discussion**

## A.    Overview of Petitioner's Claims

In Count One of the Petition, Aparicio-Villatoro asserts both a statutory violation of 8 U.S.C. § 1226(a) and the Fifth Amendment's Due Process Clause on the basis that his detention is unjustified because he bore the burden of proof, instead of the Government, at his bond hearing. *See* Petition ("Pet.") (Docket No. 1) ¶¶ 43-46. In Count Two of the Petition, Aparicio-Villatoro alleges that the Government's categorical denial of bail to certain non-citizens violates the Eighth Amendment's excessive bail clause. *Id.* ¶¶ 47-50.

For the reasons discussed below, the Court finds that as a matter of due process, Aparicio-Villatoro is entitled to a new bond hearing at which the Government bears the burden of proof by clear and convincing evidence. In light of this conclusion, the Court need not consider his claim based on a violation of 8 U.S.C. § 1226(a) or his Eighth Amendment claim.

## B.    Statutory Framework

The statute authorizing Aparicio-Larin's detention, 8 U.S.C. § 1226(a), provides in pertinent part that "an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). "[P]ending such decision, the Attorney General--(1) may continue to detain the arrested alien; and (2) may release the alien on- (A) bond of at least $1,500 with security approved by, and containing conditions

prescribed by, the Attorney General; or (B) conditional parole. .

. ." *Id.* "In connection with § 1226(a), [DHS] promulgated

regulations setting out the process by which a non-criminal alien

may obtain release[,]" which "provide that, in order to obtain bond

or conditional parole, the 'alien must demonstrate to the

satisfaction of the [decision maker] that such release would not

pose a danger to property or persons, and that the alien is likely

to appear for any future proceeding.'" *Sopo v. U.S. Attorney Gen.*,

825 F.3d 1199, 1208 (11th Cir. 2016) (quoting 8 C.F.R. §

1236.1(c)(8); second alteration in original), *vacated on other

grounds*, 890 F.3d 952 (11th Cir. 2018). The DHS district director

makes the initial custody determination; thereafter, the alien has

the right to appeal an adverse decision to an IJ, and then to the

BIA. 8 C.F.R. § 1236.1(d)(1), (3); *id.* § 1003.19(a), (f). If denied

release from custody, a § 1226(a) detainee may seek a custody

redetermination hearing upon a showing of changed circumstances. 8

C.F.R. § 1003.19(e).

While § 1226(a) is silent on the issues of which party bears

the burden of proof at a custody redetermination hearing and the

quantum of evidence necessary to satisfy that burden, *see* 8 U.S.C.

§ 1226(a), the BIA has interpreted § 1226(a) to place "[t]he burden

. . . on the alien to show to the satisfaction of the [IJ] that he

or she merits release on bond." *In re Guerra*, 24 I. & N. Dec. 37

(BIA 2006); *accord In re Adeniji*, 22 I. & N. Dec. 1102, 1116 (BIA

1999) (holding that "respondent must demonstrate that his release would not pose a danger to property or persons, and that he is likely to appear for any future proceedings"). The alien must show that he is not "a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk." *Guerra*, 24 I. & N. Dec. at 40. In cases issued following *Adeniji*, the BIA has reaffirmed that the alien properly bears the burden of proof; the quantum of proof is described simply as being "to the satisfaction of" the IJ and BIA. *E.g.*, *In re Fatahi*, 26 I. & N. Dec. 791, 793 (BIA 2016) ("An alien who seeks a change in custody status must establish to the satisfaction of the [IJ] and the [BIA] that he is not 'a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk.'") (quoting *Guerra*, 24 I. & N. Dec. at 40).

The BIA is the only forum from which an alien may seek reconsideration of the substance of an IJ's discretionary bond determination. *See* 8 C.F.R. §§ 1003.19(f), 1003.38, 1236.1(d)(3); *see also Demore v. Kim*, 538 U.S. 510, 516–17 (2003) (noting that 8 U.S.C. § 1226(e) bars federal court review of a "discretionary judgment" or a "decision" of the Attorney General) (citing 8 U.S.C. § 1226(e) (stating that "[n]o court may set aside any action or decision by [immigration officials] under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole")). "What § 1226(e) does not bar, however,

are constitutional challenges to the immigration bail system." *Pensamiento v. McDonald*, 315 F. Supp.3d 684, 688–89 (D. Mass. 2018) (citing *Jennings v. Rodriguez*, ___ U.S. ____, 138 S. Ct. 830, 841, 200 L.Ed.2d 122 (2018) (holding that challenges to "the extent of the Government's detention authority" are not precluded by § 1226(e)); *Demore*, 538 U.S. at 517 ("Section 1226(e) contains no explicit provision barring habeas review, and we think that its clear text does not bar respondent's constitutional challenge to the legislation authorizing his detention without bail [under § 1226(c)]. . . ."); other citations omitted), *appeal withdrawn sub nom. Pensamiento v. Moniz*, 18-1691 (1st Cir. Dec. 26, 2018).

Here, Aparicio-Villatoro is not challenging the IJ's discretionary decision to keep him in detention. Instead, he is arguing that the immigration bond system, in which aliens detained pursuant to § 1226(a) must bear the burden of proving they are not dangerous and are not flight risks, violates the Due Process Clause of the Fifth Amendment. "This type of constitutional claim 'falls outside of the scope of § 1226(e)' because it is not a matter of the IJ's discretionary judgment." *Pensamiento*, 315 F. Supp.3d at 689 (quoting *Jennings*, 138 S. Ct. at 841).

## C. Constitutional Framework

The Due Process Clause of the Fifth Amendment forbids the Government from "depriv[ing]" any "person . . . of . . . liberty .

. . without due process of law." U.S. CONST., amend. V. The Supreme Court has emphasized that "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Longstanding Supreme Court precedent has underscored the principle that "civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." *Addington v. Texas*, 441 U.S. 418, 425 (1979). That an individual may not be a United States citizen or may not be in this country legally does not divest them of all protections enshrined in the Due Process Clause. *See Zadvydas*, 533 U.S. at 693 ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); *Reno v. Flores*, 507 U.S. 292, 306 (1993) ("It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings."). The question that has continued to vex courts is the nature of the process due, for the Supreme Court "has recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process." *Demore*, 538 U.S. at 523 (citations omitted).

In the context of a § 1226(a) custody hearing, the  Ninth Circuit has held that the Constitution mandates placing the burden of proof on the Government to show ineligibility for bail by clear

and convincing evidence. *Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011). The Ninth Circuit explained that "even where prolonged detention is permissible, due process requires 'adequate procedural protections' to ensure that the government's asserted justification for physical confinement 'outweighs the individual's constitutionally protected interest in avoiding physical restraint.'" *Id.* (quotations omitted). Several district courts have held that *Singh*'s due process analysis survived *Jennings* since the Supreme Court expressly declined to address the constitutional question.[2] *E.g., Cortez v. Sessions,* 318 F. Supp. 3d 1134, 1146–47 (N.D. Cal. 2018) ("The [*Jennings*] Court did not engage in any discussion of the specific evidentiary standard applicable to bond hearings, and there is no indication that the Court was reversing the Ninth Circuit as to that particular issue. Accordingly, the court declines to find that *Jennings* reversed the clear and convincing evidence standard announced in *Singh* or later Ninth

---

[2]

    In *Jennings*, the class of habeas petitioners had originally argued that, absent a requirement for periodic bond hearings, 8 U.S.C. §§ 1225(b), 1226(a), and 1226(c) would violate the Due Process Clause. *See Jennings*, 138 S. Ct. at 839. Instead of addressing the constitutional argument, however, the Ninth Circuit employed the canon of constitutional avoidance and interpreted § 1226(a) to require "periodic bond hearings every six months in which the Attorney General must prove by clear and convincing evidence that the alien's continued detention is necessary." 138 S. Ct. at 847. But the Supreme Court held that "[n]othing in § 1226(a)'s text . . . even remotely supports the imposition of either of those requirements." *Id.* The Supreme Court reversed and remanded to the Ninth Circuit with instructions to consider the constitutional questions on the merits. *Id.* at 851. The Ninth Circuit, in turn, remanded the case to the district court without reaching the merits of the constitutional arguments. *Rodriguez v. Marin*, 909 F.3d 252 (9th Cir. 2018), *on remand to Rodriguez v. Robbins*, Case No. 07-cv-3239-TJH-RNB (C.D. Cal.).

Circuit cases relying on *Singh*'s reasoning."), *appeal dismissed*, No. 18-15976, 2018 WL 4173027 (9th Cir. July 25, 2018).[3]

In *Lora v. Shanahan*, 804 F.3d 601, 616 (2d Cir. 2015), *vacated*, 138 S. Ct. 1260 (2018), the Second Circuit relied on *Singh*'s constitutional avoidance analysis to hold, in the context of a criminal alien detained under § 1226(c), that due process requires a bail hearing within six months of the alien being taken into custody at which the Government must establish by clear and convincing evidence that the alien poses a risk of flight or a danger to the community. After *Lora* was decided, the Supreme Court granted *certiorari* in *Rodriguez v. Jennings*, 804 F.3d 1060 (9th Cir. 2015), and rejected the Ninth Circuit's constitutional avoidance analysis on which the Second Circuit had relied in interpreting § 1226(c). Accordingly, the Supreme Court vacated *Lora* and remanded it for further consideration in light of *Jennings v. Rodriguez*, 138 S. Ct. 830, *supra.*

On remand in *Lora*, the Second Circuit dismissed the appeal as moot because, in the interim, the petitioner had been released on bond. *Lora v. Shanahan*, 719 F. App'x 79 (2d Cir. 2018). Thus, the

---

[3]

*See also D. v. Sec'y of Homeland Sec.*, No. 0:18-CV-1557-WMW-KMM, 2019 WL 1905848, at *6 (D. Minn. Feb. 11, 2019) ("'[B]ecause the Jennings majority and dissent were focused on whether the statutes required bond hearings, declining to reach the constitutional question at issue here, the Court is unpersuaded that Jennings has any bearing on the appropriate procedures consistent with due process.'") (quoting *Hernandez v. Decker*, No. 18 Civ. 5026 (ALC), 2018 WL 3579108, at *11 (S.D.N.Y. July 25, 2018)), *report and recommendation adopted as modified sub nom. Bolus A. D. v. Sec'y of Homeland Sec.*, 376 F. Supp.3d 959 (D. Minn. 2019).

-15-

Second Circuit did not have occasion to revisit the constitutional question in *Lora*. Some district courts in this Circuit have held that while *Lora* is no longer precedential authority, it still carries "significant persuasive weight," *v. Decker*, No. 18 Civ. 2447 (AJN), 2018 WL 2357266, at *6 (S.D.N.Y. May 23, 2018) (citing *Brown v. Kelly*, 609 F.3d 467, 476-77 (2d Cir. 2010)), on the questions of the proper burden and quantum of proof at immigration bond hearings.

A number of district courts have taken up the question left open by the Supreme Court in *Jennings*, and "there has emerged a consensus view that where, as here, the government seeks to detain an alien pending removal proceedings, it bears the burden of proving that such detention is justified." *Darko v. Sessions*, 342 F. Supp.3d 429, 434-36 (S.D.N.Y. 2018) (citing *Linares Martinez v. Decker*, No. 18 Civ. 6527 (JMF), 2018 WL 5023946, at *32 (S.D.N.Y. Oct. 17, 2018); *Sajous*, 2018 WL 2357266, at *12; *Hernandez*, 2018 WL 3579108, at *10; *Frederic v. Edwards*, No. 18 Civ. 5540(AT), Docket No. 13 (S.D.N.Y. July 19, 2018); *Pensamiento,* 315 F. Supp.3d at 692; *Figueroa v. McDonald*, No. 18-CV-10097 (PBS), ___ F. Supp.3d ____, 2018 WL 2209217, at *5 (D. Mass. May 14, 2018); *Frantz C. v. Shanahan*, No. CV 18-2043 (JLL), 2018 WL 3302998, at *3 (D. N.J. July 5, 2018); *Portillo v. Hott*, 322 F. Supp.3d 698, 709 n.9 (E.D. Va. 2018); *Cortez*, 318 F. Supp.3d at 1145-46; *see also D. v. Sec'y of Homeland Sec.*, 2019 WL 1905848, at *6; *Diaz-Ceja v. McAleenan*,

No. 19-CV-00824-NYW, 2019 WL 2774211, at *10 (D. Colo. July 2, 2019).

In concluding that allocating the burden to a noncriminal alien to prove that he should be released on bond under § 1226(a) violates due process, a number of these courts have looked for guidance to the Supreme Court's precedent on civil commitment and detention. *E.g.*, *Darko*, 342 F. Supp.3d at 434 (citing *Addington*, 441 U.S. at 425 ("In considering what standard should govern in a civil commitment proceeding, we must assess both the extent of the individual's interest in not being involuntarily confined indefinitely and the state's interest in committing the emotionally disturbed under a particular standard of proof. Moreover, we must be mindful that the function of legal process is to minimize the risk of erroneous decisions."); other citations omitted). The Government clearly has legitimate interests in both public safety and securing a noncitizen's appearance at future immigration proceedings. However, the Court cannot discern any legitimate Government interest, beyond administrative convenience, in detaining noncitizens generally while their immigration proceedings are pending and no final removal order has been issued. *See Addington*, 441 U.S. at 426 ("[T]he State has no interest in confining individuals involuntarily if they are not mentally ill or if they do not pose some danger to themselves or others. Since the preponderance standard creates the risk of increasing the number of

individuals erroneously committed, it is at least unclear to what extent, if any, the state's interests are furthered by using a preponderance standard in such commitment proceedings."). The Court agrees with the district court cases holding that allocating the burden to a noncriminal alien to prove he should be released on bond under § 1226(a) violates due process because it asks "[t]he individual . . . to share equally with society the risk of error when the possible injury to the individual is significantly greater than any possible harm to the [Government]." 441 U.S. at 427. *See Darko*, 342 F. Supp.3d at 435 ("[G]iven the important constitutional interests at stake, and the risk of harm in the event of error, it is appropriate to require the government to bear the burden, particularly in light of long-established Supreme Court precedent affecting the deprivation of individual liberty[.]") (citing *Linares Martinez*, 2018 WL 5023946 at *2); *Diaz-Ceja*, 2019 WL 2774211, at *10 (similar) (citing *Addington*, 441 U.S. at 427; *Singh*, 638 F.3d at 1203; other citations omitted).

As to the applicable burden of proof, most courts that have decided the issue have concluded that Government must supply clear and convincing evidence that the alien is a flight risk or danger to society. *See Darko*, 342 F. Supp.3d at 436 (stating that "the overwhelming majority of courts to have decided the issue" utilized the "clear and convincing" standard) (collecting cases); *but see Diaz-Ceja*, 2019 WL 2774211, at *11 (finding that the appropriate

standards are ones that mirror the Bail Reform Act, i.e., the government must prove risk of flight by a preponderance of the evidence, and it must prove dangerousness to any other person or to the community by clear and convincing evidence) (internal and other citations omitted). As noted above, *Singh* and *Lora* required the Government to meet its burden by clear and convincing evidence, a conclusion followed by the vast majority of the district courts—and all the district courts in this Circuit—that have decided this issue.

The Court joins with these courts and concludes that the Fifth Amendment's Due Process Clause requires the Government to bear the burden of proving, by clear and convincing evidence, that detention is justified at a bond hearing under § 1226(a). *Darko*, 342 F. Supp.3d at 436 (citations omitted).

Having found a constitutional error, the Court next examines whether such error was prejudicial to Aparicio-Villatoro. *Brevil v. Jones*, No. 17 CV 1529-LTS-GWG, 2018 WL 5993731, at *5 (S.D.N.Y. Nov. 14, 2018) (citing *Singh*, 638 F.3d at 1205 (analyzing whether IJ's application of an erroneous evidentiary burden at bond hearing under § 1226(a) prejudiced alien detainee); *Garcia-Villeda v. Mukasey*, 531 F.3d 141, 149 (2d Cir. 2008) ("Parties claiming denial of due process in immigration cases must, in order to prevail, allege some cognizable prejudice fairly attributable to the challenged process.") (internal quotations omitted)); *Linares*

*Martinez*, 2018 WL 5023946, at *5 (rejecting government's argument that alien detained under § 1226(a) was not prejudiced by any due process violation at first bond hearing; "the IJ plainly could have found that the single set of charges—now reduced to misdemeanors—was not enough to show, by clear-and-convincing evidence, that Linares's release would pose a danger"); *but see Darko*, 342 F. Supp.3d at 436 (finding due process error due to IJ's imposition of burden of proof on alien detained under § 1226(a); granting habeas relief and ordering second individualized bond hearing without undertaking analysis of whether alien was prejudiced by erroneous burden of proof at first bond hearing).

As an initial matter, the BIA directs IJs to consider the following factors in determining whether an immigrant is a flight risk or poses a danger to the community: (1) whether the immigrant has a fixed address in the United States; (2) the immigrant's length of residence in the United States; (3) the immigrant's family ties in the United States, (4) the immigrant's employment history, (5) the immigrant's record of appearance in court, (6) the immigrant's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses, (7) the immigrant's history of immigration violations; (8) any attempts by the immigrant to flee prosecution or otherwise escape from authorities; and (9) the immigrant's manner of entry to the United States. *Matter of Guerra*,

20 I & N Dec. at 40. Here, the IJ considered Aparicio-Villatoro's positive equities (e.g., he rents a house in Maryland, owns a car, and has multiple family members with legal status in the United States, including a brother who is a U.S. citizen, and a son who is a U.S. citizen) but focused mainly on Aparicio-Villatoro's grandfather's alleged use of a smuggler to help his grandson gain entry to the United States and the absence of copies of Aparicio-Villatoro's tax returns for several years.[4] Not to undercut the IJ's concerns, the Court notes that Aparicio-Villatoro appears to have a number of favorable equities, which the IJ recognized.[5] Particularly in light of the fact that the Government did not present any submissions in opposition to Aparicio-Villatoro's bond application, the Court "cannot conclude that the clear and convincing evidence standard would not have affected the outcome of

---

[4]

Aparicio-Villatoro's counsel's brief (Docket No. 1-1, pp. 14-23 of 164) indicates that while Aparicio-Villatoro testified that his grandfather may have paid someone to help him enter the United States over thirteen years ago, he did not testify to paying anyone to smuggle him into the United States. Moreover, he was a minor at the time of his entry into the United States. *Id.*, p. 18 of 164. Although the IJ found that the alleged actions by Aparicio-Villatoro and his grandfather were tantamount to aiding and abetting a smuggler, counsel argued that he was not involved in any scheme to smuggle persons into the United States. Moreover, she noted, the record did not establish he had been arrested or charged in any smuggling schemes let alone any criminal conduct. *Id.* With regard to the tax return issue, Aparicio-Villatoro testified he has filed tax returns since he had began working in the United States but was unable to obtain copies of the older tax returns. His counsel pointed out that the IJ did not make a finding that Aparicio-Villatoro testified falsely when he stated under oath that he had filed taxes every year that he worked in this country. Therefore, counsel argued, it was erroneous for the IJ to find he was wilfully engaging in tax evasion. *Id.*, p. 19 of 164.

[5]

In addition, the IJ rejected DHS's argument, at the removal hearing, that Aparicio-Villatoro had not met his burden of demonstration the requisite good moral character for obtaining cancellation of removal and adjustment of status. *See* Docket No. 7, p. 58 of 95.

the bond hearing." *Singh*, 638 F.3d at 1205.

Habeas relief accordingly is warranted to the extent that Aparicio-Villatoro must be afforded a new bond hearing before an IJ at which the Government must adduce clear and convincing evidence that he is a flight risk (there is no suggestion in the record that Aparicio-Villatoro was or is a danger to the community).

## V.   Conclusion

For the foregoing reasons, the Petition for a writ of habeas corpus is granted to the extent that, within ten days of the date of entry of this Decision and Order, the Government shall bring Aparicio-Villatoro before an IJ for an individualized bond hearing. At that hearing, the Government shall bear the burden of proving, by clear and convincing evidence, that he is a flight risk. If the Government fails to provide Aparicio-Villatoro with such a bond hearing within ten days, the Government shall immediately release him. If the Government holds the required bond hearing but fails to prove, by clear and convincing evidence, that Aparicio-Villatoro is a flight risk, the Government must release him on bail with appropriate conditions. The Government is further ordered to provide a status report to this Court within five days following the completion of the bond hearing. The Clerk of Court is directed to close this case.

**SO ORDERED.**

**s/ Michael A. Telesca**

_____

HONORABLE MICHAEL A. TELESCA
United States District Judge

Dated:      August 16, 2019
            Rochester, New York.